**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**HELENA DIVISION**

DONNIE NOLAN,

                    Petitioner,

      vs.

JIM SALMONSEN, WARDEN
GREEN, ATTORNEY GENERAL OF
THE STATE OF MONTANA,

                    Respondents.

Cause No. CV 23-18-H-BMM

**ORDER**

This matter comes before the Court on an amended petition filed by pro se state prisoner Donnie Nolan ("Nolan") seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  (Doc. 12.)

Following a review of his amended filing, it appeared Nolan's petition was unexhausted and should be dismissed without prejudice. The Court directed Nolan to show cause as to why his petition should not be dismissed for failure to exhaust state remedies.  (Doc. 14.)  Nolan timely responded.  (Doc. 16.) Nolan filed a petition for writ of habeas corpus with the Montana Supreme Court in which he raised the same due process claim he presented to this Court while these proceedings were pending.  *See D. Nolan v. Green*, OP 23-045, Pet. (filed July 24, 2023).  The Montana Supreme Court denied Nolan relief. *D. Nolan v. Green*, OP

1

23-045, Ord. (Mont. Aug. 8, 2023).

Nolan properly exhausted that claim by presenting his due process claim to the Montana Supreme Court. The Court advised Nolan that the change in the procedural posture of his case altered the standard of review this Court was required to apply.  Under the Anti-terrorism and Effective Death Penalty Act ("AEDPA"), where a state court resolves a federal constitutional claim on the merits, the petitioner in federal court may not succeed on that claim absent a showing that the state court resolution of the claim was contrary to law or unreasonable. 28 U.S.C. § 2254(d). The Court provided Nolan an opportunity to show why the deferential standard of 2254(d) should not apply to his case and informed Nolan of the ways in which he might make such a showing.  (Doc. 17.) Nolan responded to the Court's order, (Doc. 18), and subsequently filed two supplements to his response.  (Docs. 19 & 20.)

Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts requires courts to examine the petition before ordering the respondent to file an answer or any other pleading.  The petition must be summarily dismissed "[i]f it plainly appears from the face of the petition and any attached exhibits that the petitioner is not entitled to relief in the district court."  *Id.* If summary dismissal is not warranted, the court must order the respondent to file an answer, motion, or other response or "to take other action the judge may order."

2

*Id.*  As explained below, Nolan's petition will be denied and dismissed.

## I.    Background

The Montana Supreme Court explained the history of Nolan's state court

proceedings as follows:

> Nolan's parole revocation is premised upon two matters in the Municipal
> Court for the City of Great Falls. On October 19, 2022, the court set a
> preliminary hearing for violation of a protective order, 3rd offense. The
> court later dismissed and closed the matter on November 14, 2022 (No. CR-
> 2022-0873) following the prosecution's motion to dismiss. In the other
> matter, (Docket No. TK-275-2022-0006719), the court accepted Nolan's not
> guilty plea to violation of a protective order, 2nd offense.
>
> On January 24, 2023, the Board issued a parole revocation, pursuant to §§
> 46-23-1023 and -1025, MCA. The Board set a date for Nolan's appearance,
> while noting his violations were for illegal drug use and for not remaining
> law abiding.
>
> On March 13, 2023, the Municipal Court dismissed the remaining matter
> (Docket No. TK-275-2022-0006719) upon the prosecution's motion to
> dismiss.
>
> Nolan argues he has a liberty interest in parole. He maintains that
> "[e]verything [said] to obtain a Protective Order was made up." He
> maintains that no evidence of bad conduct was presented and that the City
> Prosecutor moved to dismiss the charges. Nolan argues that an offender
> must be convicted for a non-compliance violation, and not merely charged.
> He further contends that he was not timely brought before the Board of
> Pardons and Parole (Board) for his appearance and that the Board violated
> his due process rights when it did not apply the Montana Incentives and
> Intervention Guide (MIIG).

*Nolan v. Green*, No. OP 23-0405, 2023 WL 5093825, at *1 (Mont. Aug. 8, 2023).

The Court first determined that Nolan did not have a liberty interest in parole

3

under state law. *Id*. The Court then concluded that the parole board properly considered the conduct underlying Nolan's Municipal Court charges in support of the revocation, even though those charges were ultimately dismissed. *Id*. at *2. Additionally, the violations at issue were not classified as "compliance violations." The parole board did not improperly revoke Nolan's parole based upon the violations. *Id*. The Court further determined Nolan was not entitled to a preliminary hearing because he had been charged with new offenses and received adequate notice of both the violations and the new offenses. *Id*. at *3. Based upon the violations of the conditions of his parole, the parole board had reason to revoke the grant of parole. *Id*. Nolan was not entitled to release from custody or habeas corpus relief, as no due process violation occurred. *Id*. Nolan's petition was denied and dismissed. *Id*. at *4.

## II. Nolan's Allegations

Nolan first alleges that his right to confrontation was violated when he was unable to cross examine the witnesses against him in the state court. (Doc. 12 at 4, ¶ 13A). This exclusion, in turn, led the Parole Board to justify his revocation and determine that the underlying conduct had not been a mere compliance violation. (*Id*.) Nolan next argues his right to due process was violated when the Parole Board failed to make him aware of the nature of the violations alleged against him. (*Id*. at 5, ¶ 13B). Nolan argues the Parole Board did not provide him with an

"intervention hearing" or provide him with the minimum requirements at his revocation hearing.  Nolan contends that he should be released because he has not been convicted of a new offense. (*Id.*)

Nolan asks this Court to overturn his revocation hearing and release him back to the same status he had before the revocation was filed.  (*Id.* at 7, ¶ 17.)

## III.   Analysis

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may not grant a habeas corpus application "with respect to any claim that was adjudicated on the merits in State court proceedings," 28 U.S.C. § 2254(d), unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). *See, e.g., Knowles v. Mirzayance,* 556 U.S. 111, 114 (2009). The Montana Supreme Court reasonably applied Nolan's due process claim.  Nolan's remaining claim is procedurally defaulted and lacks merit. //

### A. Due Process Violation

The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides that a state shall not "deprive any person of life, liberty, or

property, without due process of law[.]"  U.S. Const. Amend. XIV, § 1.  Thus, to state a due process violation an individual must establish the existence of a constitutionally recognized liberty interest that is protected by the Due Process Clause and must demonstrate the procedures afforded to the individual for the protection of the liberty interest were constitutionally deficient.  *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454, 460 (1989).  "Protected liberty interests may arise from two sources- the Due Process Clause itself and the laws of the States."  *Id*.  (quotation and citation omitted); *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (stating that a protected liberty interest could "arise from the Constitution itself, [. . . or] from an expectation or interest created by state laws or policies.").

It is well established that there exists no substantive federal right to release on parole, and "the only federal right at issue" in the context of habeas claims regarding parole hearings is a procedural right.  *Swarthout v. Cooke*, 562 U.S. 216, 222 (2011) (per curium).  Likewise, Montana recognizes no state-created liberty interest in parole.  *Worden v. Mont. Bd. of Pardons & Parole*, 962 P. 2d 1157, 1165 (Mont. 1998) (holding that when the Legislature amended the statute in 1989, it eliminated any liberty interest in parole); *see also* Mont. Code Ann. § 46-23-208(1) (providing the parole board *may* release a prisoner on parole when certain criteria are met). There is neither a constitutional right nor a protected liberty

6

interest at issue in Nolan's case.

In *Morrissey v. Brewer,* 408 U.S. 471 (1972), the U.S. Supreme Court held that, although parolees enjoy only "conditional liberty," termination of that liberty constitutes a "grievous loss" requiring "some orderly process." *Id.* at 495. However, "the revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due to a defendant in such a proceeding does not apply to parole revocations." *Id*. at 480. The U.S. Supreme Court determined that the process due to an individual facing parole revocation includes "two hearings, one a preliminary hearing at the time of his arrest and detention to determine whether there is probable cause to believe that he has committed a violation of his parole, and the other a somewhat more comprehensive hearing prior to the making of the final revocation decision." *Gagnon v. Scarpelli,* 411 U.S. 778, 781–82 (1973) (*citing Morrissey,* 408 U.S. 471). *Morrissey* also explains, however, that the requirements of due process are flexible and "not all situations calling for procedural safeguards call for the same kind of procedure." *Morrissey,* 408 U.S. at 481. Additionally, though *Morrissey* and *Gagnon* require a probable cause determination before revocation, the individual states may implement different procedures and still satisfy due process. *See generally*, *id.* at 481, 485, 487; *Gagnon,* 411 U.S. at 782.

7

Nolan seems to suggest that he had to be convicted of a new offense and that he was entitled to an on-site hearing before revocation. (Doc. 18 at 7.) The underlying charges against Nolan were dismissed. Nolan believes, therefore, that his parole was unlawfully revoked, and that he was denied the procedural process to which he was due before his parole revocation. (*Id*. at 9.)

The decision not to hold a preliminary hearing was made pursuant to state statute, which provides an initial hearing need not be held when a parolee has been charged in any court with a violation of the law. *See* Mont. Code Ann. § 46-23-1024(1)(b); *see also Nolan*, No. OP 23-0405, 2023 WL 5093825, at *3. By virtue of the Municipal Court charges, the Montana Supreme Court concluded that Nolan was not entitled to an on-site hearing. In fact, the Montana Supreme Court concluded that probable cause to initiate the revocation proceedings existed. The charges themselves provided Nolan notice. The Montana Supreme Court also pointed out that Nolan additionally had violated the conditions of his parole by also using illegal drugs and failing to conduct himself as a good citizen, not just by being charged with the Municipal Court offenses. *Nolan*, No. OP 23-0405, 2023 WL 5093825, at *3.

Under *Morrissey*, the State of Montana remains free to implement its own procedures, and those procedures may satisfy due process requirements. 408 U.S. at 481. Nolan's due process rights under *Morrissey* were not violated. Put another

way, Nolan has failed to demonstrate that the Montana Supreme Court's decision denying his due process claim was contrary to or involved an unreasonable application of *Morrisey*.  Accordingly, this Court must afford deference under 28 U.S.C. § 2254(d).  The claim will be denied.

Nolan also suggests the Montana Supreme Court erred in denying his habeas petition when it relied upon MCA § 46-23-1024(1)(b), rather than the administrative rules and the MIIG, in determining his Municipal Court charges negated the need for a preliminary hearing.  (*See e.g.,* Doc. 18 at 7.)  A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of a violation of federal law binding upon the state courts, and is not available for alleged errors in the interpretation and application of state law.  *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).  "[E]rrors of state law do not concern us unless they rise to the level of a constitutional violation." *Oxborrow v. Eikenberry*, 877 F.2d 1395, 1400 (9th Cir. 1989). State courts are the ultimate arbiters of state law. Federal courts remain bound by state court constructions, and are limited to deciding whether a conviction violates the Constitution, laws, or treaties of the United States.  *See Bonin v. Calderon*, 59 F. 3d 815, 841 (9th Cir. 1995).

To the extent that Nolan asks this Court to interpret and apply state law to correct a perceived wrong, this is not a cognizable ground for relief in a federal habeas corpus proceeding.  *Mendez v. Small*, 298 F. 3d 1154, 1158 (9th Cir.

2002)("[a] state court has the last word on interpretation of state law"); *Estelle v. McGuire,* 502 U.S. 62, 67-68 ("we reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"); *Bonin v. Calderon*, 59 F. 3d 815, 841 (9th Cir. 1995) (violation of a "state law right does not warrant habeas corpus relief"); *Lewis v. Jeffers*, 497 U.S. 764, 789 (1990) ("Federal habeas corpus relief does not lie for errors of state law"); *Peltier v. Wright*, 15 F. 3d 860, 861-2 (9th Cir. 1994) (generally federal habeas corpus relief unavailable for errors of state law). Nolan may believe the Montana Supreme Court applied the incorrect state law to his case. This belief fails to create a viable federal constitutional claim.  The state's highest court stands as the final authority on the law of that state. *Sandstrom v. Montana,* 442 U.S. 510, 516-17 (1979).  This portion of the claim is not cognizable and will also be denied.

## B. Confrontation Clause Violation

As a preliminary matter, it appears this claim is procedurally defaulted.  The Court explained to Nolan in a prior order the principles of exhaustion. (Doc. 11 at 2.)  Nolan apparently heeded this Court's guidance and, as set forth above, returned to the Montana Supreme Court to exhaust his due process claim via a state habeas petition.  Nolan did not present his confrontation clause claim in that proceeding. "A federal habeas court generally may consider a state prisoner's federal claim only if he has first presented that claim to the state court in

10

accordance with state procedures." *Shinn v. Martinez Ramirez*, 596 U.S. __, 142 S. Ct. 1718, 1727 (2022). If a claim is unexhausted, but state procedural rules would now bar consideration of the claim, it is technically unexhausted but will be deemed procedurally defaulted. *See e.g., Cooper v. Neven*, 641 F. 3d 322, 327 (9th Cir. 2011). Thus, the claim is procedurally defaulted.

It appears, however, that the claim also lacks merit. The Confrontation Clause of the Sixth Amendment applies to the states through the Due Process Clause of the Fourteenth Amendment. "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with witnesses against him." U.S. Const. amend. VI. The "main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination." *Davis v. Alaska*, 415 U.S. 308, 315-16 (1974). Nolan cannot establish that he was denied the ability from engaging in confrontation where the Municipal Court charges against him were dismissed. No trial or adversarial proceeding occurred and, accordingly, no opportunity for confrontation presented itself. The basis for the Parole Board's denial of the preliminary hearing prior to Nolan's revocation was grounded in state law. In short, Nolan fails to establish a violation of the Confrontation Clause.

//

## IV.   Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it

enters a final order adverse to the applicant." Rule 11(a), Rules governing § 2254 Proceedings. A COA should issue as to those claims on which a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Nolan has failed to make a substantial showing of a denial of a federal constitutional right. Nolan's Due Process claim does not survive deferential review under AEDPA. Nolan's Confrontation Clause claim is procedurally defaulted and lacks merit. Accordingly, jurists would find no basis to encourage further proceedings. A certificate of appealability is denied.

Based on the foregoing, the Court enters the following:

## ORDER

1. Nolan's Amended Petition (Doc. 12) is **DENIED** and **DISMISSED**.

2. The Clerk of Court is directed to enter judgment in favor of the Respondents and against Petitioner.

3. A certificate of appealability is **DENIED**.

DATED this 25th day of January, 2024.

Brian Morris, Chief District Judge
United States District Court